No. 3408

Second Circuit

## CONTINENTAL SUPPLY CO. v. BROWDER

(November 18, 1929. Opinion and Decree.)

Foster, Hall & Smith, of Shreveport, attorneys for plaintiff, appellant.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for defendant, appellee.

ODOM, J. By this suit plaintiff seeks to recover of the defendant $200 balance due on a promissory note, dated May 16, 1927, together with attorney's fees and interest, and the sum of $250, alleged to be due for storage on a drilling rig, at $25 per month, this being the amount of storage due up to the date of filing of this suit, and for the further sum of $25 per month, as storage on said rig for such additional time as the rig may be stored with plaintiff.

Defendant answered admitting the execution of the note and admitting further that it was due plaintiff the sum of $225 storage on the drilling rig; but specially denied its liability to plaintiff in any sum whatsoever for the reasons and causes set up in a suit which he had previously instituted against this plaintiff in which it was alleged that plaintiff was due him a large sum as damages for its unlawful detention of the drilling rig; and set up specifically that plaintiff had unlawfully caused on several occasions the drilling rig to be seized and advertised for sale and had unlawfully and without right repeatedly refused to deliver the drilling rig, to him, notwithstanding he had offered to pay plaintiff whatever amount he was due on the rig as storage. In an amended and supplemental answer, defendant, in reconvention, asked for judgment against plaintiff in a large sum.

There was judgment in the district court rejecting plaintiff's demands and in favor of defendant on his reconventional demand in the sum of $400; from this judgment, both plaintiff and defendant have appealed.

As the pleadings and issues in this case are somewhat involved, it is necessary to give a brief history of this controversy:

On July 1, 1926, John L. Anderson, who owned the drilling rig over which this litigation arises, placed the same in the warehouse belonging to the plaintiff company for storage at an agreed monthly rental of $50. Anderson failed to pay the monthly rentals and on March 26, 1927, the plaintiff company obtained judgment against him by default for the sum of $450.

On April 16, thereafter, the plaintiff company had the drilling rig seized under a writ of fieri facias and advertised for sale. However, before the date of sale, the present defendant, J. R. Browder, having previously purchased the rig from Anderson, entered into an agreement with the plaintiff company, evidenced by a document which reads as follows:

"May 16th, 1927.

"Mr. J. R. Browder,
"Shreveport, La.

"Dear Sir:

"Confirming agreement of this date, in connection with our judgment against Jno. L. Anderson, covering rental on a Rotary Drilling Rig now located in our yard on the Mansfield road, we agree to a compromise total, including attorney fees and court costs, of $600.00 up to June 1st, 1927. If the rig remains on this location after that date, you are to pay us at the rate of $25.00 per month, rental in advance.

"Payment is to be as follows:

"$300.00 cash as represented by American National Bank Cashier's check #69325, of this date.

"$300.00 on June 15th, 1927, represented by promissory note of this date.

"It is further agreed that, at your request, we will assign to you our judgment against Anderson, on payment of the above described note.

"Yours very truly,

"THE CONTINENTAL SUPPLY CO.

"H. C. Elder
"District Manager."

On making this agreement with Browder, the plaintiff company ordered the sale discontinued and had the property released from seizure. The defendant, Browder, failed to pay the note of $300 when due and the plaintiff company again had the drilling rig seized and advertised for sale under an alias fi. fa. But, before the date of the sale, it seems that Anderson, as the agent of Browder, paid to the plaintiff company the sum of $100 on the note and the plaintiff again discontinued the sale and ordered the property released.

After considerable delay and without having received further payment on the amount due, the plaintiff company again had the property seized and advertised for sale. The property, having been appraised at something over $3,000, and the sheriff, having failed to receive a bid equal to two-thirds of the appraisement, had the property re-advertised to be sold for what it would bring, on twelve months' bond, and W. V. Lunn became the purchaser at $1,000. However, previous to the date on which the property was to be sold, J. L. Anderson made affidavit that the property under seizure belonged to the defendant, J. R. Browder, which affidavit was filed with the sheriff. Lunn, after having bid the property in, declined to accept title thereto on account of this affidavit, and the sheriff, according to his returns, returned the writ to the clerk's office and released the property from seizure. But, between the date on which Lunn bid the property in and the date on which the sheriff made his return, the plaintiff company ruled Anderson, Browder and Lunn to show cause why the sale should not be perfected and the amount of the bid paid into court. The rule against Anderson and Browder was dismissed by the court on some technical ground, but the rule as to Lunn has not been disposed of.

It will be noted that the plaintiff company by having the drilling rig seized under the various writs was proceeding all along upon the theory that it owned the judgment obtained against John L. Anderson in 1926, which judgment recognized plaintiff's privilege as warehouseman on the property in its possession. It is contended by counsel for defendant, as we understand it, that the transaction which took place between Browder and the plaintiff company on May 16, 1927, as evidenced by the document copied above, was a novation of the debt evidenced by the judgment and that the judgment was in effect paid, and that plaintiff's subsequent seizures of the property under said judgment were illegal. The judge of the district court found and held that the above quoted document did not evidence a sale of the judgment, but only a promise to sell. We do not find it necessary to pass upon the question as to whether the document evidences a sale of the judgment or whether it was merely an agreement to sell, because we find that the parties themselves seem to have understood that it was merely an agreement to sell and that plaintiff still had a right to execute the judgment. This is evidenced by the fact that subsequent to the date on which that agreement was entered into, the plaintiff again seized the drilling rig, and defendant, either personally or through his agent, Anderson, came in and paid $100 on the note and secured the release of the property from seizure.

So both plaintiff and defendant seem to have understood that plaintiff was still entitled to execute on that judgment. That being true, it cannot be said that the seizures which, plaintiff caused to be made of this machinery in an effort to collect its debt were unlawful.

The district judge gave as his reason for rejecting plaintiff's demands that plaintiff had violated its agreement with defendant with reference to the transfer of the judgment by causing the property to be sold, thereby placing it in a situation where it could not deliver the judgment, having already executed it, and could not deliver the property, having already sold it. However, we can see no reason why the plaintiff could not at any time have complied with its agreement and made a sale of the judgment to the defendant, in accordance with its original agreement. The fact that plaintiff had caused execution to issue suggests no reason why it could not have released its seizure and completed the sale of the judgment to Browder, upon Browder's paying the balance due, plus whatever storage charges that had accumulated.

On the point that the plaintiff had caused the property to be sold to Lunn, we find that the sale was never completed—Lunn having refused to accept the same and the sheriff having returned the writ and released the property. Our conclusion is that the attempted sale to Lunn amounts to nothing at all and that the property, under the circumstances, is in the same situation that it was previous to its having been seized under the last alias fi. fa. This is true, because, as stated, Lunn refused to accept the sale and the plaintiff has abandoned its efforts to force him to accept the sale by bringing the present suit to enforce its indebtedness against Browder, and, as already stated, the sheriff's returns show that the writ was returned and the property released.

The situation which presents itself, therefore, is this: The plaintiff has, by the institution of the present suit, abandoned all rights or claims it may have had to the ownership of the judgment against Anderson and has abandoned its right to proceed against Lunn to force his acceptance of the sale. The only claim which the plaintiff company now makes is that Browder owes to it the balance due on the promissory note, plus storage on the property at $25 per month, from June 1, 1927. Defendant admits that he owes these amounts. If Browder pays the amount of his indebtedness to the plaintiff company, he will own the judgment against Anderson. The testimony shows that the drilling rig is still in possession of the plaintiff company. If Browder pays the indebtedness which he admits that he owes, plaintiff must, of course, surrender the property to him, he having purchased it from Anderson.

Now, as to defendant's reconventional demand, we hold, as did the district judge, that defendant did not make out its case. The reconventional demand in damages is based on the theory that defendant offered to pay the amount of indebtedness which he admittedly owed to plaintiff, and that plaintiff refused to accept the amount and deliver the property. It is true that counsel for Browder wrote plaintiff that Browder was willing to pay the amount of the indebtedness, provided the machinery was released. But Browder made no tender of the amount. Counsel for plaintiff testified that immediately after receipt of the letter offering to pay the amount due, he not only wrote defendant's counsel that plaintiff was ready and willing to accept the amount, but that he went to counsel personally and stated to him that upon pay-

ment of the amount due, the machinery would be released. J. L. Anderson, whose testimony was taken by commission, stated that he at one time went to the plaintiff company and offered to pay the amount due, but that, due to the fact that some controversy arose over the amount due for storage, nothing came of the interview. We find nothing in the record to indicate that the plaintiff company has ever acted arbitrarily in its dealings with the defendant, but, to the contrary, has extended courtesies from time to time and has made no move, except legitimate efforts, to collect the amount due it.

For the reasons assigned, it is now ordered, adjudged and decreed that the judgment appealed from be set aside; and it is further ordered and decreed that plaintiff have judgment against and recover from the defendant, J. R. Browder, the sum of $300, with interest thereon at eight per cent per annum, from June 15, 1927, until paid, less a credit of $100 paid December 8, 1927, and ten per cent attorney's fees on the amount of principal and interest due; and judgment in the further sum of $25 per month from June 1, 1927, down to and including the date on which this judgment is paid and the property removed from plaintiff's premises, as storage on the property, with recognition of plaintiff's lien and privilege as warehouseman on the property; defendant to pay all costs.